# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

JAMES SALMINI,

                          Plaintiff,

          vs.                                    Civil Action No.
                                                 3:06-CV-458 (FJS/DEP)

MICHAEL J. ASTRUE, Commissioner
of Social Security,[1]

                          Defendant.

APPEARANCES:                              OF COUNSEL:

<u>FOR PLAINTIFF</u>:

LACHMAN, GORTON LAW FIRM          PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

<u>FOR DEFENDANT</u>:

HON. ANDREW BAXTER
Acting United States Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

---

[1]     Plaintiff's complaint, which was filed on April 12, 2006, named Jo Anne B. Barnhart, the former Commissioner of Social Security, as the defendant. On February 12, 2007, Michael J. Astrue took office as Social Security Commissioner. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. *See* 42 U.S.C. § 405(g).

OFFICE OF GENERAL COUNSEL          BARBARA L. SPIVAK, ESQ.
Social Security Administration          Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278                      SHEENA V. WILLIAMS-BARR,
                                        ESQ.
                                        Assistant Regional Counsel


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff James Salmini, who suffers from various diagnosed physical and mental conditions including, *inter alia*, ulcerative colitis, osteoarthritis of the left shoulder and knee, a heart condition, anxiety, and depression, has commenced this proceeding pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's denial of his application for disability insurance benefits ("DIB") under the Social Security Act.  In his appeal, plaintiff asserts that the determination of the administrative law judge ("ALJ") assigned by the agency to hear and determine the matter, to the effect that he was not disabled at the relevant times, resulted from the ALJ's failure to properly develop the record and overlooks a contrary opinion of Salmini's treating physician, rejected by the ALJ as being inconsistent with plaintiff's hearing testimony which was later reconciled with the treating physician's opinion in an affidavit tendered to the Social Security Administration Appeals Council ("Appeals Council").  Plaintiff

additionally maintains that the vocational expert opinions elicited by the ALJ, which served as the lynchpin of his finding of no disability, were based upon hypothetical questions which did not closely approximate Salmini's condition and resulting limitations.

Having carefully reviewed the record in light of the plaintiff's arguments, I find that the Commissioner's determination resulted from the application of proper legal principles, and is supported by substantial evidence. Accordingly, I recommend that the determination be affirmed, and plaintiff's complaint in the action be dismissed.

I.    BACKGROUND

Plaintiff was born in 1942; at the time of the administrative hearing in this matter, he was sixty-three years old. Administrative Transcript at pp. 57, 315, 323.[2]  Plaintiff is married, has a fourteen year old daughter, and lives with his family in a house in Binghamton, New York. AT 57-59, 77, 340. Plaintiff is a high school graduate, but has taken no college courses. AT 67, 323.

Plaintiff last worked in April of 2004. AT 63, 324. Prior to that time, Salmini was employed for approximately forty-one years as a retail store

---

[2]    Portions of the administrative transcript, filed by the Commissioner and consisting of a compilation of evidence and proceedings before the agency, Dkt. No. 3, will be cited hereinafter as "AT ___."

manager and service technician.  AT 63, 73.  In his Social Security

Disability Report, plaintiff stated that he stopped working as a result of

fatigue and colitis.[3]  AT 63.

Over time plaintiff has received treatment from various health care

providers for his conditions, which have included principally coronary

artery disease, and ulcerative colitis and/or inflammatory bowel disease.

Plaintiff has an extensive history of treatment of a coronary condition by

Dr. Walters, a cardiologist, covering the period between September of

1996 and November 2004.  AT 116-32, 265-69, 275-76, 280.  Treatment

of plaintiff's cardiac condition has included bypass surgery, undergone in

1989 and apparently successful, as well as catheterization with stenting in

October 2004.  AT 270-74.  The more recent cardiac catheterization

reflected a left carotid bruit as well as a history of peripheral vascular

disease and right corroded endarterectomy.  AT 271.  That procedure also

reflected two 90% lesions, both of which were stented during the

procedure, as well as moderate degeneration of vein graphs not

amenable to stenting.  AT 273.   As a result of his evaluation of plaintiff's

---

[3]      Although not necessarily inconsistent with that statement, it should be
noted that on August 13, 2004 plaintiff advised one of his treating physicians, Dr. John
T. Walters, that he had retired, AT 266, and during the hearing confirmed that he was
receiving a pension from his prior employer and that he began receiving Social
Security retirement benefits in December of 2003.  AT 348.

condition, Dr. Walters cleared Salimini for hernia repair surgery which was scheduled for October 2004.  AT 268, 274.

Plaintiff's intestinal problems have been treated over time by Dr. Anthony Monticello, a gastroenterologist.  AT 194-211, 228-29, 283-85. Plaintiff has also received treatment for his internal conditions, which have generally been diagnosed as ulcerative colitis and inflamed bowel disease, from doctors at Lourdes Hospital, located in Binghamton, New York, including in April of 2003 where he was sent following a transient ischemic attack.  *See* AT 213-27.

Plaintiff's physical conditions have also been monitored over time by Dr. Michael J. Wasco, his primary care physician.  AT 133-85, 290-309. At various times Dr. Wasco has diagnosed the plaintiff and treated him for many conditions, including a hernia, osteoarthritis of the left shoulder and knee, degenerative disc disease of the lumbar spine, as well as anxiety and depression.  Plaintiff's physical conditions have been treated with such medications as Baycol, Pravachol, Metoprolol, Crestor, Zantac, Extra Strength Tylenol, and B-12 injections.  *See* AT 66, 89, 134-36, 138, 140, 143, 145, 153, 168, 170, 239, 265, 268, 275, 301.

In addition to his physical conditions, plaintiff has also sought treatment with Dr. Wasco for mental health issues beginning in February

of 2001 and extending through March of 2003, complaining of being
overwhelmed and stressed by a combination of circumstances including
his work and pain.  See, e.g.,  AT 134, 140, 143, 145.  Dr. Wasco
diagnosed plaintiff as suffering from anxiety and depression and
prescribed such medications as Prozac and Zoloft.  AT 134-36, 140, 143,
145, 147, 149.

In addition to the records of his treating sources, the administrative
transcript contains a report of one consultative physical examination.  That
report reflects that plaintiff was examined by Dr. Pranab Datta, an internal
medicine consultant, on July 30, 2004.  AT 238-43.  Based upon his
examination and Salmini's account of his daily activities, Dr. Datta
diagnosed the plaintiff as suffering from a history of ulcerative colitis,
transient ischemic attack, status post right carotid endarterectomy, and
arthritis involving the left shoulder and hip, as well as recurrent right
inguinal hernia and probable bilateral carpal tunnel syndrome.[4]  AT 242.
Addressing the potential limitations associated with those conditions, Dr.
Datta found that Salmini does not suffer any significant limitations in his
upper extremities for fine and gross manipulation of the hands, but is

---

[4]       In his report Dr. Datta noted that plaintiff showed no significant evidence
of a mental impairment.  AT 241.

mildly limited in the areas of prolonged sitting, walking, standing, and climbing, and should avoid heavy lifting and carrying.  *Id.*

On August 30, 2004, Allan Hochberg, Ph.D., completed a psychiatric review technique form regarding the plaintiff.  AT 251-63.  In it, Dr. Hochberg found that plaintiff has a documented history of suffering from anxiety, which does not fit the diagnostic criteria of a listed, presumptively disabling impairment. AT 256.  Dr. Hochberg concluded that plaintiff has mild restrictions on activities of daily living, difficulty in maintaining social relationships, and difficulty in maintaining concentration, persistence, or pace, but that there is insufficient evidence of repeated episodes of deterioration.  AT 261.

II.    PROCEEDINGS BEFORE THE AGENCY

Plaintiff filed an application for DIB benefits on June 9, 2004, asserting a disability onset date of April 10, 2004.  AT 57-59.  Following the denial of the application, AT 33-37, a hearing was conducted, at plaintiff's request, on May 3, 2005 by ALJ Michael Brounoff to address plaintiff's claim for benefits.  *See* AT 315-54.

On September 23, 2005, ALJ Brounoff issued a written decision regarding plaintiff's request for benefits.  AT 24-32.  Based upon his *de novo* review of the record, and applying the now familiar five part

7

sequential test for determining disability, ALJ Brounoff concluded at step one that plaintiff had not engaged in substantial gainful activity since his alleged disability onset date.  AT 31.  At steps two and three of the disability algorythim, the ALJ concluded that plaintiff's coronary artery disease, ulcerative colitis, history of carotid stenosis, osteoarthritis of the left shoulder and knee, degenerative disc disease of the lumbar spine, and recurrent inguinal hernia were impairments of sufficient severity to significantly restrict his ability to perform basic work activities, but that they did not meet or equal any of the listed, presumptively disabling impairments set forth in the governing regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.[5]  AT 31.

Before proceeding to step four of the sequential analysis, ALJ Brounoff next determined that despite the limitations imposed by his medical conditions, plaintiff retains the residual functional capacity ("RFC") to

> occasionally lift and carry 35 pounds; stand and walk at least 2 hours in an 8-hour workday; sit without restriction; occasionally push and pull 10 pounds; climb a single flight of stairs very occasionally; but never climb otherwise; very

---

[5]   The ALJ concluded that plaintiff's mental conditions were not sufficiently severe to qualify as impairments for purposes of the disability analysis, and plaintiff does not appear to press this issue in support of his request for judicial review.

> occasionally crouch; occasionally crawl and stoop;
> never reach overhead, but otherwise reach
> frequently, and never drive at night.

AT 31.  In making that determination, ALJ Brounoff relied upon medical evidence in the record, including reports generated by treating and evaluating physicians, and rejected plaintiff's subjective testimony, to the extent that it was inconsistent with that finding, as not totally credible.  AT 31.  Applying his RFC finding, ALJ Brounoff determined that plaintiff is unable to perform his past relevant work but, relying upon testimony elicited from a vocational expert, in the form of responses to written interrogatories, concluded that there is available work within the national and local economies which plaintiff is capable of performing including, *inter alia,* as a telemarketer, receptionist, billing accountant/collections, security guard, and in retail sales.  AT 31-32.  ALJ Brounoff thus concluded that plaintiff is not disabled and, accordingly, not entitled to Social Security benefits.  AT 32.  ALJ Brounoff's opinion became a final determination of the agency on March 23, 2006, when the Appeals Council denied his request for review of that decision.  AT 5-8.

A.    This Action

Plaintiff commenced this action on April 12, 2006.  Dkt. No. 1.  Issue was thereafter joined on August 1, 2006 by the Commissioner's filing of

an answer, accompanied by an administrative transcript of the proceedings and evidence before the agency.  Dkt. Nos. 3, 4.  With the filing of plaintiff's brief on November 7, 2006, Dkt. Nos. 7, 8, and that on behalf of the Commissioner on January 30, 2007, Dkt. No. 11, the matter is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(d).[6]  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

     A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart,* 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal*

---

      [6]    This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

*v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.

2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen,* 817

F.2d 983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to

whether the Commissioner applied the proper legal standards, his

decision should not be affirmed even though the ultimate conclusion

reached is arguably supported by substantial evidence.  *Martone*, 70 F.

Supp. 2d at 148 (citing *Johnson*, 817 F.2d at 986).  If, however, the

correct legal standards have been applied and the ALJ's findings are

supported by substantial evidence, those findings are conclusive, and the

decision should withstand judicial scrutiny regardless of whether the

reviewing court might have reached a contrary result if acting as the trier

of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d

Cir. 1988); *Barnett v. Apfel*, 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998)

(Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

       The term "substantial evidence" has been defined as "'such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420,

1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197,

229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184

(2d Cir. 2003).  To be substantial, there must be "'more than a mere

scintilla'" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427 (quoting *Consolidated Edison Co.*, 308 U.S. at 229, 59 S. Ct. at 217); *Martone*, 70 F. Supp. 2d at 148 (quoting *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be

considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs.,* 705 F.2d 638, 644 (2d Cir. 1983).

     B.    <u>Disability Determination - The Five Step Evaluation Process</u>

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . "  42 U.S.C. § 423(d)(1)(A).   In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only
> unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the
> immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he

would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).   If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of

his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If it is

determined that it does, then as a final matter the agency must examine

whether the claimant can do any other work.  *Id.* §§ 404.1520(g),

416.920(g).

The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it

becomes incumbent upon the agency to prove that the claimant is

capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding

whether that burden has been met, the ALJ should consider the claimant's

RFC, age, education, past work experience, and transferability of skills.

*Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    The Evidence In This Case

1.    Development of the Record

In support of his challenge to the Commissioner's determination,

plaintiff first argues that the ALJ shirked his duty to fully develop the

record with regard to the issue of his ability to lift, particularly in view of the

fact that the plaintiff chose to proceed without legal representation at the

hearing.  Plaintiff contends that during the hearing the ALJ prevented him

from completing his testimony on this issue, and that his answers were

15

"cut off".

Given the remedial intent of the Social Security statute and the non-adversarial nature of benefits proceedings, an ALJ is charged with an affirmative duty to develop the medical record if it is incomplete. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999). This obligation is of heightened importance in cases involving *pro se* claimants, as the "ALJ has a duty to adequately protect a *pro se* claimant's rights 'by ensuring that all of the relevant facts [are] sufficiently developed and considered.'" *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) (quoting *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980)). In furtherance of the duty to develop the record, an ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate to determine disability and additional information is needed to reach a determination. 20 C.F.R. §§ 404.1512(e), 416.912(e).

In the first instance where plaintiff's ability to meet exertional work requirements was addressed during the hearing, the ALJ asked Salmini how much weight he could lift before he would become short of breath, following up on an exchange related to plaintiff's cardiac symptomology. AT 336. Plaintiff responded that he was not sure, but that it could be as much as thirty-five or forty-five pounds. *Id.* The plaintiff added that he

16

believed it was in this range based on a prior experience, but before he could complete the thought, the ALJ began speaking, moving into another subject area unrelated to lifting.  *Id.*

When the ALJ later directly addressed plaintiff's capacity for lifting, Salmini responded "[t]hirty-five before it bothers me and – –. "  AT 344. Before completing his sentence, the ALJ then transitioned to another potential limitation inquiring how long the plaintiff can sit.  *Id.*  There is no indication as to what, if anything, the plaintiff sought to add, nor does the record disclose any request on his part for permission to expand upon or explain his answer.

At a later point during the hearing, the ALJ referenced Dr. Wasco's medical source statement, to the effect that in his opinion plaintiff can only lift less than ten pounds, and questioned whether that was true in light of plaintiff's earlier testimony that he could lift thirty-five pounds "every now and then."  AT 349.  Plaintiff responded that while he did not think he could constantly lift that weight, he nonetheless believed he was capable of lifting that amount.  *Id.*

Plaintiff argues that these exchanges demonstrate the ALJ's failure to properly develop the record and an effort to "deliberately or unintentionally" mislead him when answering questions regarding the

weight he can lift.  Despite these assertions, there is no evidence in the

record that the ALJ purposefully or inadvertently "surpressed [sic]"

plaintiff's testimony.  While plaintiff did not complete his answers on two

occasions, it is abundantly clear from the third exchange that there was no

mistake as to the weight Salmini believes he can lift.  Notably, the ALJ

questioned plaintiff regarding the medical assessment authored by his

treating physician, Dr. Wasco.  The ALJ specifically sought clarification

from plaintiff as to the discrepancy between Dr. Wasco's assessment that

he can only lift less than ten pounds and his testimony that he is able to lift

thirty-five pounds every now and then.  AT 349.  The ALJ did not prevent

plaintiff from answering the question, nor did plaintiff agree with Dr.

Wasco's opinion.  Had plaintiff agreed with Dr. Wasco's assessment, he

had every opportunity to voice that opinion in response to the ALJ's

questioning.  Instead, when confronted with his treating physician's more

restrictive opinion plaintiff explicitly reaffirmed that he can lift thirty-five

pounds.[7]

---

[7]      Plaintiff further argues that in an affidavit filed with the Appeals Council in
February of 2006, he clarified that had he been pointedly asked how much he can lift
occasionally, he would have affirmed Dr. Wasco's finding that he can only lift less than
ten pounds with that frequency.  *See* AT 10.  That affidavit, filed after the ALJ's
unfavorable ruling, is in direct conflict with plaintiff's sworn hearing testimony, in which
he unequivocally testified to having the ability to lift 35 pounds "every now and then."
AT 349.  While that later phrase was not specifically defined by either the ALJ or the

Based on a thorough review of the evidence, I find no basis to conclude that the ALJ failed to properly develop the record to fill any voids.  Accordingly, it is recommended that this argument on the part of the plaintiff, in support of his request to set aside the Commissioner's determination, be rejected.

### 2.    Rejection of a Treating Source Assessment

The ALJ's finding of no disability hinges upon his findings regarding the limitations imposed by plaintiff's physical conditions and resulting RFC determination.  In support of his challenge to the Commissioner's determination, plaintiff argues that in arriving at his RFC determination ALJ Brounoff improperly rejected a key component of the opinion of his treating physician, Dr. Wasco, concerning the limitations with respect to his ability to lift and carry.[8]

Ordinarily, the opinion of a treating physician is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.  *Veino*, 312 F.3d at 588;

---

plaintiff, it could reasonably be interpreted as the functional equivalent of the ability to lift on an occasional basis.

[8]      Plaintiff does not challenge any of the remaining findings made by the ALJ with respect to his RFC.

*Barnett*, 13 F. Supp. 2d at 316.[9]  Such opinions are not controlling, however, if contrary to other substantial evidence in the record, including the opinions of other medical experts.  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino*, 312 F.3d at 588.  Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner.  *Veino*, 312 F.3d at 588.

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]"  *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527,

---

[9]    The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions from your treating sources . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.   When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for the rejection of his or her opinions.  *Johnson*, 817 F.2d at 985-86; *Barnett*, 13 F. Supp. 2d at 316-17.

With one exception, the ALJ's determination regarding plaintiff's capabilities is closely congruent with a medical source statement completed on April 6, 2005 by plaintiff's general treatment provider, Dr. Wasco.  AT 305-08.  It is that one exception, related to Dr. Wasco's opinion regarding plaintiff's inability to lift ten pounds or more on an occasional basis, that plaintiff contends was improperly rejected.  In arriving at that determination the ALJ noted that while Dr. Wasco's assessment was for the most part consistent with plaintiff's testimony regarding his capabilities, it reflected a considerably greater restriction in lifting than plaintiff's hearing testimony, during which he repeated on more than one occasion that he is able to lift up to thirty-five pounds, at least occasionally.  Plaintiff's hearing testimony, relied upon by the ALJ in his

determination to reject this portion of Dr. Wasco's assessment, provided a proper basis for that rejection.  *See Wright v. Barnhart*, 473 F. Supp. 2d 488, 493 (S.D.N.Y. 2007).

It should be noted, moreover, that at no time during plaintiff's treatment for any of his physical conditions was he restricted by medical care providers to carrying or lifting any certain weight.  *See generally* AT 116-308.  The only other record evidence regarding weight restrictions came from Dr. Datta, who concluded that plaintiff "should avoid heavy lifting and carrying".  AT 242.  Although no amount was delineated, this opinion generally supports the weight restrictions discussed in plaintiff's testimony.

From a review of the record it is apparent that with one exception the ALJ in fact accepted the conclusions of plaintiff's treating physician, Dr. Wasco, regarding his work-related limitations.  With regard to that single exception, related to his ability to lift, the ALJ properly deferred to plaintiff's contrary hearing testimony regarding his lifting capacity, particularly in view of the paucity of other evidence in the record from Dr. Wasco or any other health care provider substantiating the opinion that plaintiff is only capable of lifting less than ten pounds occasionally.

3.    New Evidence

The third argument raised by the plaintiff in support of his challenge to the Commissioner's determination centers upon evidence submitted by the plaintiff, in the form of an affidavit explaining his lifting capacity and a statement from a vocational expert, to the Appeals Council.  Plaintiff maintains that the Appeals Council failed to consider the effect of his affidavit and improperly declined to give it proper consideration, while at the same time acknowledging a memorandum by a vocational expert.

The agency's regulations expressly authorize a claimant to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision.  20 C.F.R. §§ 404.970(b), 416.1470(b); *Perez v. Chater*, 77 F.3d 41, 43 (2d Cir. 1996).  Even in cases where the Appeals Council has declined to review the ALJ's decision, any new evidence submitted by the claimant nonetheless becomes part of the administrative record; the regulations require the Appeals Council to "evaluate the entire record including the new and material evidence submitted . . . [and] review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record."  20 C.F.R. §§ 404.970(b), 416.970(b); *Perez*, 77 F.3d at 45 (quoting § 404.970(b)).  As a consequence, when the Appeals Council denies review after considering new evidence, the Commissioner's final decision "necessarily includes the

Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." *Perez*, 77 F.3d at 45 (citation and quotations omitted).

These rules are not without their limitations; to be properly considered, post-hearing evidence must be new and material, and must relate to the period on or before the date of issuance of the ALJ's decision. *Perez*, 77 F.3d at 45. Specifically, evidence is "new" if it is not merely cumulative of what is already in the record, and is "material" if it is both 1) relevant to the claimant's condition during the time period for which benefits have been denied – that is, the period on or before the ALJ's decision, and 2) probative – in other words, that there is a "reasonable probability that the new evidence would have influenced the Commissioner to decide the claimant's application differently." *Webb v. Apfel*, No. 98-CV-791, 2000 WL 1269733, at *14 (W.D.N.Y. Feb. 8, 2000) (citing *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir.1990)).

In this instance it is clear that the Appeals Council considered the memorandum presented by the vocational expert, *see* AT 310-14, but found that it did not undermine the ALJ's decision. *See* AT 4-8. Although plaintiff obviously disagrees with the determination of the Appeals Council, that disagreement does not constitute a basis for his contention that the

evidence was ignored or improperly considered.  Having received the supplemental vocational expert report submitted by the plaintiff, I discern no basis to conclude that it demonstrates that the ALJ's decision is flawed, and not supported by substantial evidence.

Turning to plaintiff's affidavit, while there is no express indication that it was taken into account by the Appeal's Council, the affidavit nonetheless became a part of the administrative record.  Accordingly, the affidavit has been reviewed by the court in connection with plaintiff's contention that the record was not properly developed, and that the ALJ's RFC determination is not properly supported.  Nonetheless, as was previously discussed, the affidavit does not provide a basis to contradict the RFC findings made by the ALJ since plaintiff's hearing testimony does not contain any discrepancy that would call into question his understanding of the questions being posed and the frequency with which he could lift a certain weight.  Accordingly, any failure on the part of the Appeals Council to consider the affidavit, if indeed it was overlooked, was harmless.

### 4.   Vocational Expert Testimony

The fourth and final argument raised by the plaintiff in support of his judicial challenge to the Commissioner's determination relates to expert

opinions elicited, through written interrogatories, by the ALJ.  Plaintiff maintains that the hypothetical posed to the vocational expert, forming the basis for the expert's opinion that jobs exist in the national and regional economy which the plaintiff is capable of performing, is not supported by substantial evidence.

When the testimony of a vocational expert is utilized, as was the case here, the ALJ must present a hypothetical that incorporates all of a claimant's impairments.  *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 57 (W.D.N.Y. 2002) (quoting *Totz v. Sullivan*, 961 F.2d 727, 730 (8th Cir. 1992)).  If the ALJ fails to pose hypothetical questions which do "not include all of a claimant's impairments, limitations and restrictions, or [are] otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability."  *Kuleszo*, 232 F. Supp. 2d at 57 (citing *Morse v. Shalala*, 16 F.3d. 865, 874 (8th Cir. 1994)).

After concluding that plaintiff cannot perform his past relevant work, *see* AT 29, the ALJ turned to the responses to the interrogatories posed to the vocational expert, *see* AT 101-13, incorporating the RFC findings made by him. AT 29-31.  The ALJ's second hypothetical to the expert described an individual who could lift and carry thirty-five pounds

occasionally, stand and walk at least two hours and sit without restriction

in an eight-hour workday, occasionally push and pull ten pounds, climb a

single flight of stairs very occasionally but never climb otherwise, very

occasionally crouch, occasionally crawl and stoop, never reach overheard

but otherwise reach frequently, and never drive at night.  AT 30, 112.  In

response, the vocational expert stated that the person described could

perform certain jobs available in the economy, including  as a

telemarketer, receptionist, billing accountant/collector, security guard, and

retail sales clerk.  *Id.*

Plaintiff argues that the hypothetical posed was unsupported since

Dr. Wasco noted that Salmini he could only occasionally reach in all

directions, while the question put to the expert posited that the person

under consideration could never reach overhead, but was otherwise

capable of reaching frequently, and further that the environmental

limitations noted by Dr. Wasco were also absent.[10]  As the ALJ noted,

however, while Dr. Wasco's opinion as to plaintiff's limitations is entitled to

strong consideration, so too is the claimant's testimony, which should also

guide in the RFC determination.  In this instance plaintiff testified that

---

[10]     The court notes that plaintiff's sole challenge the ALJ's RFC
determination relates to the lifting and carrying element.

while he would have a problem reaching overhead, he did not have any difficulty reaching at normal, waist high levels.  AT 351-52.  Plaintiff's hearing testimony thus provides substantial evidence to support the portion of the ALJ's hypothetical to the vocational expert related to the ability to reach.

The question of whether environmental limitations must be included in a hypothetical rendered to a vocational expert is addressed in Social Security Ruling 83-14, which succinctly notes that "[t]he need to avoid environments which contain objects or substances commonly known not to exist in most workplaces would be an obvious example of a restriction which does not significantly affect the medium occupational base."[11] Social Security Ruling ("S.S.R.") 83-14, 1983 WL 31254, at *5, *Titles II and XVI: Capability To Do Other Work – The Medical-Vocational Rules as*

---

[11]    The exertional requirements associated with the ALJ's RFC determination, while not expressed in those terms, generally correspond to the requirements of medium work, which is defined under the governing regulations as follows:

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can do sedentary and light work.

20 C.F.R. § 404.1567(c).

*a Framework For Evaluating A Combination of Exertional and Nonexertional Impairments* (S.S.A. 1983).  Thus, the omission of the environmental limitations included within Dr. Wasco's assessment in the hypothetical posed to the expert does not undermine the agency's determination.

Plaintiff further argues that the Commissioner did not carry his burden of establishing the availability of work capable of being performed by him since the skills identified by the vocational expert were not shown to be transferable to the jobs identified.  Clearly, "[t]he ALJ is entitled to rely on vocational expert evidence in deciding whether a plaintiff retains the capacity to perform other work which exists in significant numbers in the national economy."  *Marzean v. Comm'r of Soc. Sec.*, No. 3:05-CV-1368, 2008 WL 1945229, at *5 (N.D.N.Y. May 1, 2008) (Hurd, J.) (citing 20 C.F.R. § 404.1566(e)).  Moreover, "[i]t is well-established that elicitation of testimony from a vocational expert is a proper means of fulfilling the agency's burden at step five of the disability test to establish the existence of jobs in sufficient numbers in the national and regional economy that plaintiff is capable of performing."  *Id.* (citing *Bapp v. Bowen*, 802 F.2d 601, 604-05 (2d Cir. 1986)).

Although the ALJ adopted those jobs identified in response to the

29

hypothetical presented, the vocational expert also discussed other positions available that not only conformed to the ALJ's RFC determination, but further incorporated plaintiff's transferable skills.  *See* AT 109, 112.  Specifically, the vocational expert stated that various jobs which plaintiff is capable of performing exist in significant numbers in the national economy, including as a sales manager, statistical clerk, and cashier I.  *See* Dictionary of Occupational Titles, *Sales Manager*, 163.167-018, 1991 WL 647311, *Statistical Clerk*, 216.382-062, 1991 WL 671930, *Cashier I*, 211.362-010, 1991 WL 671835 (4th ed. 1991).  In any event, many of the transferable skills described by the vocational expert also correspond to the positions discussed in the ALJ's determination, particularly the jobs of telemarketer, receptionist, billing accountant/collector, security guard, and retail sales clerk.  *Compare* AT 109 *with* Dictionary of Occupational Titles, *Telemarketer*, 299.357-014, 1991 WL 672624, *Reception/Appointment Clerk*, 237.367-010, 1991 WL 672185, *Bill/Account Collector*, 216.362-014, 1991 WL 671915, *Security Guard*, 372.667-034, 1991 WL 673100, *Retail Sales*, 211.462-014, 1991 WL 671841.  Thus, this last argument of the plaintiff provides no basis to set aside the agency's determination.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

By all accounts, plaintiff suffers from various diagnosed physical conditions which present certain limitations on his ability to perform work-related functions.   In determining that plaintiff is not disabled, despite those conditions, the ALJ properly developed the record, rejected the opinion of plaintiff's treating physician, Dr. Wasco, to the limited extent that it was inconsistent with plaintiff's testimony, and relied on a vocational expert's testimony to determine that plaintiff is capable of performing available work despite his limitations.  From a careful review of the record now before the court, including the new evidence submitted by the plaintiff to the Appeals Council, I conclude that the Commissioner's determination is supported by substantial evidence and thus find no basis to recommend that it be set aside.  Accordingly, it is hereby

RECOMMENDED that the defendant's motion for judgment on the pleadings be GRANTED, the Commissioner's determination AFFIRMED, and plaintiff's complaint DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of Court within ten (10) days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C.

§ 636(b)(1) (2006); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge


Dated:      December 16, 2008
            Syracuse, NY